SFK/jja

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN FINLAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-05824 |
| | ) | |
| LAKE COUNTY CORRECTIONAL | ) | Judge John J. Tharp, Jr. |
| FACILITY INSTITUTION, a corporation, | ) | |
| ARMOR CORRECTIONAL HEALTH | ) | |
| SERVICES, INC., a corporation, | ) | |
| d/b/a ARMOR HEALTH CORPORATION, | ) | JURY TRIAL DEMANDED |
| WELL PATH, LLC, a corporation, | ) | |
| RILEY KLEUTGEN, | ) | |
| HEATHER MARTELON, ARNP, and | ) | |
| ALVARO ENCINAS, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT AT LAW

Plaintiff, RYAN FINLAYSON (hereinafter "FINLAYSON"), by his attorney, SARAH F. KING, complaining of Defendants, LAKE COUNTY CORRECTIONAL FACILITY INSTITUTION, a corporation (hereinafter "LAKE COUNTY"), ARMOR CORRECTIONAL HEALTH SERVICES, INC., d/b/a ARMOR HEALTH CORPORATION (hereinafter "ARMOR"), WELL PATH, LLC, a corporation (hereinafter "WELL PATH"), RILEY KLEUTGEN, R.N. (hereinafter "KLEUTGEN"), HEATHER MARTELON, ARNP (hereinafter "MARTELON"), and ALVARO ENCINAS, M.D. (hereinafter "ENCINAS"), and each of them, alleges as follows:

1

## COUNT I

## NATURE OF COMPLAINT

1.     This is a civil action arising under 42 U.S.C.A. § 1983. Plaintiff alleges a violation of his civil rights under United States Constitution, in that he was denied adequate medical care and treatment by the Defendant in a deliberate indifference to a serious medical need. Plaintiff makes a demand for a jury trial.

## JURISDICTION

2.     Jurisdiction of this Court is invoked under 28 U.S.C.A. § 1331 and 28 U.S.C.A. § 1343.  Plaintiff further invokes the Court's supplementary jurisdiction under 28 U.S.C.A. § 1367, for his pendent State claims (Count IV – Medical Negligence).

## PARTIES

3.     Plaintiff, FINLAYSON, is a citizen of the United States and a resident of Lake County, Illinois. On December 30, 2019, Plaintiff was a pre-trial detainee at the Lake County Correctional Facility Institution, located in Lake County, Illinois.

4.     On December 30, 2019, and at all times mentioned herein, Defendant, LAKE COUNTY, was a correctional facility for the State of Illinois.

5.     On December 30, 2019, and at all times mentioned herein, Defendant, LAKE COUNTY, was acting under the color of state law, ordinances and/or regulations, and is being sued in its official capacity for monetary relief.

6.     On December 30, 2019, and at all times mentioned herein, Defendant, ARMOR, was a corporation contracting with the State of Illinois to provide medical services at the Lake County Correctional Facility Institution.

2

7.      On December 30, 2019, and at all times mentioned herein, Defendant, ARMOR, was acting under the color of state law, ordinances and/or regulations, and is being sued in its official capacity for monetary relief.

8.      On December 30, 2019, and at all times mentioned herein, Defendant, WELL PATH, was a corporation contracting with the State of Illinois to provide medical services at LAKE COUNTY.

9.      On December 30, 2019, and at all times mentioned herein, Defendant, WELL PATH, was acting under the color of state law, ordinances and/or regulations, and is being sued in its official capacity for monetary relief.

10.      On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGEN, was a duly licensed registered nurse serving as a staff nurse at LAKE COUNTY.

11.      On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGEN, was an actual and/or apparent agent and employee of LAKE COUNTY.

12.      On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGEN, was an actual and/or apparent agent and employee of ARMOR HEALTH.

13.      On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGEN, was an actual and/or apparent agent and employee of WELLPATH.

14.      On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGEN, was acting under the color of state law, ordinances and/or regulations, and is being sued in her individual capacity for monetary relief.

15.      On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, was a duly licensed nurse practitioner serving as a staff nurse at LAKE COUNTY.

16.     On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, was an actual and/or apparent agent and employee of LAKE COUNTY.

17.     On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, was an actual and/or apparent agent and employee of ARMOR HEALTH.

18.     On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, was an actual and/or apparent agent and employee of WELLPATH.

19.     On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, was acting under the color of state law, ordinances and/or regulations, and is being sued in her individual capacity for monetary relief.

20.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, was a duly licensed physician, serving as a staff physician at LAKE COUNTY.

21.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, was an actual and/or apparent agent and employee of LAKE COUNTY.

22.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, was an actual and/or apparent agent and employee of ARMOR HEALTH.

23.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, was an actual and/or apparent agent and employee of WELLPATH.

24.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, was acting under the color of state law, ordinances and/or regulations, and is being sued in his individual capacity for monetary relief.

## COMMON FACTS

25.     On December 16, 2019, the Plaintiff, FINLAYSON, was booked by the Lake County Sheriff's Office and placed in the custody of Defendant, LAKE COUNTY.

26.     On December 16, 2019, the Plaintiff, FINLAYSON, had a classification form that indicated that he had a history of seizures and was on pharmacologic treatment for Bi-polar disorder, PTSD, and anxiety.

27.     On December 16, 2019, despite knowing that the Plaintiff, FINLAYSON, suffered from these mental health conditions, the Plaintiff was not provided pharmacologic treatment until sometime after December 27, 2019.

28.     On December 19, 2019, Joseph Amedu performed an examination of the Plaintiff, FINLAYSON, and noted that the Plaintiff appeared to be having withdrawals from the lack of his prescribed medication.

29.     On December 20, 2019, Marta Borawski performed a psychiatric screening examination on the Plaintiff, FINLAYSON, and also noted that the Plaintiff was experiencing withdrawals from his prescribed medication.

30.     On December 22, 2019, the Plaintiff, FINLAYSON, was noted to be anxious and asked about his psychiatric medication and was informed by Nurse Amy Diaz that the medication process was not complete.

31.     On December 26, 2019, the Plaintiff, FINLAYSON, emphasized, "I need my psych meds" to the nurse during an intake screening.

32.     On December 30, 2019, the Plaintiff, FINLAYSON, seriously injured his left hand while at Defendant, LAKE COUNTY.

33.     On December 30, 2019, the Plaintiff, FINLAYSON, was taken into solitary confinement after which a medical emergency was called by Officer Pitcher.

34.     On December 30, 2019, at or about 8:55 a.m., the Plaintiff, FINLAYSON, complained of severe pain to his left hand for which he was given pain medication and a pack of ice.

35.     On December 30, 2019, the Plaintiff, FINLAYSON, was placed in an isolation jail cell where he was under a 23-hour lockdown after being attended to by on-site medical staff of the Defendant, ARMOR.

36.     On December 30, 2019, at or about 10:13 a.m., the Plaintiff, FINLAYSON, was examined by the Defendant, KLEUTGEN, who noted that the left hand was swollen with visible deformity.

37.     On December 30, 2019, the Defendant, KLEUTGEN, notified the Defendant, MARTELON, about the condition of the Plaintiff, FINLAYSON.

38.     On December 30, 2019, the Defendant, MARTELON, placed a phone order for an x-ray for the Plaintiff, FINLAYSON, to be scheduled for the next day.

39.     On December 30, 2019, the Plaintiff, FINLAYSON, was prescribed Motrin to be given twice a day for three days and was offered an ice pack.

40.     On December 31, 2019, Plaintiff, FINLAYSON, underwent an x-ray of his left hand.

41.     On January 4, 2020, Nurse Riley contacted the Defendant, ENCINAS, regarding "meds for hand."  The Defendant, ENCINAS, placed a phone order for one 600mg Ibuprofen, twice daily for two weeks with ice for three days.

42.    From December 31, 2019, through January 14, 2020, the Plaintiff, FINLAYSON, continued to suffer excruciating pain to his left hand and wrist while remaining in his isolation cell for two weeks.

43.    On January 14, 2020, the Plaintiff, FINLAYSON, was transported to Evanston Hospital where he was placed under the care of Hallie E. Labrador, M.D. and had three x-ray views of his left hand.

44.    On January 14, 2020, the x-rays showed that the Plaintiff, FINLAYSON, had "a comminuted angulated fracture of the midshaft of the fifth metacarpal. Adjacent soft tissue swelling was seen. A periosteal reaction noted along the midshaft of the fourth metacarpal, representing health of a bone fracture. Clinical correlation was advised."

45.    On January 14, 2020, Dr. Labrador recommended immediate splint immobilization with a surgical consultation and noted that there was a "visible and significant hand deformity."

46.    On January 14, 2020, Dr. Labrador applied a cast to the injured hand of the Plaintiff, FINLAYSON, and instructed him to follow up with doctors Gray, Levitz, Mejia and/or Malhotra.

47.    On or about January 14, 2020, the Plaintiff, FINLAYSON, after returning to Defendant, LAKE COUNTY, reported to Ynez Rivera that "I have to see a surgeon.

48.    Between January 14, 2020, and February 18, 2020, there was an undue delay in scheduling and transporting the Plaintiff, FINLAYSON, to Dr. Mejia. In that time span, the Plaintiff continued to suffer excruciating pain. During that time FINLAYSON was seen by the following agents and/or employees of Defendants, LAKE COUNTY, ARMOR, and/or WELL PATH: SUSAN LIN, M.D., JAYNE BENDER, NAKISHA SHEPHERD, SHERINA VELEZ, VIKTORIYA ROUSE-FREEMAN, PHARAH MONDESIR, YNEZ RIVERA, MELLODY

STANDIFORD, MARTA BORAWSKI, JAMES MILLER, SHARON HILL, NEVA ABENS, PETER CROTTY, JOSPEH AMEDU, FLORENCE DIMNDUOBI, and SABRINA CROUSE.

49.     On February 18, 2020, the Plaintiff, FINLAYSON, was transported to Skokie Northshore Hospital where he was evaluated by Dr. Alfonso Mejia, M.D., and received three more x-ray views of his left hand and wrist.

50.     On February 18, 2020, the x-rays confirmed that the Plaintiff, FINLAYSON, had an angulated comminuted fracture of the distal shaft of the fifth metacarpal. There was development of some callus formation around the fracture compatible with healings although the fracture remained ununited. The dorsal angulation of the fracture fragment remained unchanged since the x-ray performed on January 14, 2020, by Dr. Labrador. There was periosteal new bone formation around the shaft of the fourth metacarpal compatible with a healing fracture which had progressed since the x-ray performed on January 14, 2020.

51.     On February 18, 2020, Dr. Mejia diagnosed the Plaintiff, FINLAYSON, with a closed left fifth metacarpal shaft fracture, and Dr. Mejia recommended surgical intervention of the left fifth metacarpal after noting the significant hand deformity of the Plaintiff's left hand.

52.     On February 18, 2020, Dr. Mejia informed the Plaintiff, FINLAYSON, about the risks of the surgery, the Plaintiff consented to the surgery, and the surgery was scheduled.

53.     On March 16, 2020, at or about 9:43 a.m., the surgery for Plaintiff, FINLAYSON, was canceled.

54.     From March 2020 through October 2020, the Plaintiff, FINLAYSON, followed up with the medical staff of Defendant, ARMOR, the staff of Defendant, LAKE COUNTY, and Defendant, KLEUTGEN, regarding his on-going need for surgical treatment.

55.     On September 29, 2020, the Plaintiff, FINLAYSON, filed a pro se complaint against Defendants, Armor Medical, Ashley, Nurse Riley, Nurse Farrah, Nurse Joshua, Nurse Kesha, Nurse Melanie, Nurse Consuela, Officer Gonzalez, Sergeant Reidy, Sergeant Aber Jabbar.

56.     On October 6, 2020, Viktoriya Rouse-Freeman, ARNP, stated, "Arista referral placed for L hand 5th metacarpal injury in 12/2019, was followed by hand surgery and scheduled surgery in March, surgery was canceled due to pandemic. Will need re-eval if surgery still is an option. Patient has pain and difficulty writing (L hand), exercising and other activities."

57.     On October 20, 2020, at or about 9:30 a.m., the Plaintiff, FINLAYSON, was transported to Dr. Mejia's office where the Plaintiff's left hand was reexamined.

58.     On October 20, 2020, Dr. Mejia took three x-ray views of the left hand of the Plaintiff, FINLAYSON.  Dr. Mejia concluded that there was a healed fifth metacarpal neck fracture with deformity. There was about 60 degrees of volar angulation of the main distal fracture fragment. There was a healed fracture of the fourth metacarpal shaft with mild deformity. There was no acute fracture or subluxation. There was swelling over the dorsum of the hand where the joint spaces were preserved.

59.     On October 20, 2020, Dr. Mejia scheduled corrective surgery for November 2, 2020, for Plaintiff FINLAYSON'S left hand.

60.     On November 02, 2020, at or about 9:30 a.m., the Plaintiff, FINLAYSON, was transported to Glenbrook Hospital where he underwent corrective surgery of his left little finger metacarpal malunion by Dr. Mejia and Dr. Malik.

61.     On November 02, 2020, the Plaintiff, FINLAYSON, was discharged from the hospital and scheduled to follow-up with Dr. Mejia and Dr. Malik on November 10, 2020. The Plaintiff left the hospital with a splint over the operated hand.

9

62.     On November 10, 2020, the Plaintiff, FINLAYSON, was transported to Evanston Hospital for his post-surgery follow up.

63.     On November 10, 2020, the Plaintiff, FINLAYSON, received three more x-ray views of his left hand which showed conspicuity of instrumented osteotomy lucency of the fifth metacarpal shaft with associated osseous fragments. The hardware was intact and the positioning and alignment of the hand were stable.

64.     On November 10, 2020, a fiberglass short-arm cast was then applied to the left hand of Plaintiff, FINLAYSON, and was scheduled for follow up in two weeks.

65.     From November 2020 until January 2021, the Plaintiff, FINLAYSON, was not seen by Dr. Mejia or Dr. Malik.

66.     On January 19, 2021, the Plaintiff, FINLAYSON, was transported to Dr. Mejia's office.

67.     On January 19, 2021, Dr. Mejia removed the fiberglass short-arm cast on the left hand of the Plaintiff, FINLAYSON, and replaced it with a left wrist/hand splint which was to be worn at night only.

68.     On January 19, 2021, further x-rays were taken on the left hand of the Plaintiff, FINLAYSON, which showed a side plate with five threaded screws crossing the osteotomy of the left fifth metacarpal. The alignment and position were near anatomic. The osteotomy lucency was still apparent with no visible osseous bridging.

69.     On January 19, 2021, the Plaintiff, FINLAYSON, was prescribed physical therapy by Dr. Mejia; his first appointment of occupational therapy took place on the same day at Occupational Therapy Skokie Ambulatory Care Center.

70. Plaintiff, FINLAYSON, continues to suffer from chronic pain and weakness in his left hand, there is a visible deformity in the Plaintiff's left hand, and normal day-to-day activity causes the Plaintiff, FINLAYSON, to experience pain.

71. To date, the injury of Plaintiff, FINLAYSON, continues to affect his abilities, including but not limited to pushing, pulling, lifting, writing, feeding himself, bathing himself, sleeping properly, and protecting himself.

## COUNT II

### *LAKE COUNTY CORRECTIONAL FACILITY INSTITUTION*
**FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

72. Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73. Defendant, LAKE COUNTY, as a corporation, as a state correctional facility, was and is responsible for having and following policies, practices, and procedures that assure that pretrial detainees and inmates at Defendant, LAKE COUNTY, including the Plaintiff, FINLAYSON, received adequate attention and treatment.

74. Defendant, LAKE COUNTY, failed to have policies, practices, and procedures to assure that the Plaintiff, FINLAYSON, as a pretrial detainee and inmate at Defendant, LAKE COUNTY, received adequate medical attention.

75. On December 30, 2019, and at all times thereafter, Defendant, LAKE COUNTY's, policies, practices, and procedures were ineffective in delivering medical attention and treatment for serious medical needs in that they:

11

a) Delayed review and approval of medical care to inmates as a cost-saving measure;

b) Delayed arranging for necessary medical care, including but not limited to orthopedic consultation and x-ray imaging studies;

c) Ignored requests for second opinions and/or follow-up consultation;

d) Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for evaluation of broken/fractured bones;

e) Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for recommended surgical evaluation; and

f) Failed to ensure the timely treatment of pretrial detainees with prescribed psychiatric medication.

76.    The aforementioned policies, practices, and procedures of Defendant, LAKE COUNTY, caused and continue to cause a serious and on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and denied him necessary care and treatment, thereby endangering the health and well-being of the Plaintiff, FINLAYSON.

77.    The aforementioned policies, practices, and procedures of Defendant, LAKE COUNTY, amount to deliberate indifference to the objectively serious medical needs of the Plaintiff, FINLAYSON.

78.    Defendant, LAKE COUNTY's, deliberate indifference to the objectively serious medical needs of the Plaintiff, FINLAYSON, caused and continue to cause him to suffer serious chronic pain, soreness, immobility, weakness, and visible deformity of his left hand. The Plaintiff's unresolved injury continues to affect his ability to live a normal life, write, feed himself, sleep properly, push, pull, and protect himself.

79.    Defendant, LAKE COUNTY, has been and is acting under the color of state law in carrying out as a correctional facility for the State of Illinois the above-described policies,

practices, and procedures concerning the provision of medical care and treatment to the Plaintiff, FINLAYSON.

80.     Defendant, LAKE COUNTY's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs constituted and constitute an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment, in violation of Plaintiff's constitutional rights.

81.     Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he otherwise would have had access to outside the County Jail, including the right to reasonable medical treatment. Because of this, Plaintiff, FINLAYSON, was by necessity wholly dependent upon employees of Defendant, LAKE COUNTY, correctional officers at County Jail, and medical staff.

82.     While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

83.     Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

84.     Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

85.     On December 30, 2019 and thereafter, Defendant, LAKE COUNTY, had a duty to provide FINLAYSON with reasonable medical care and reasonable protection from harm.

13

86.     On December 30, 2019 and thereafter, Defendant, LAKE COUNTY, failed to provide the Plaintiff, FINLAYSON, reasonable medical care and failed to protect him from harm.

87.     The injuries of the Plaintiff, FINLAYSON, are the direct and proximate result of Defendant, LAKE COUNTY's, failure to discharge its duty to protect Plaintiff, FINLAYSON, and the failure to take objectively reasonable measures to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON,  by providing him with reasonable medical care.

88.     Because of Defendant, LAKE COUNTY's, failure to protect Plaintiff, FINLAYSON, from substantial risk of harm and failure to provide him with reasonable medical care, Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

**COUNT III**

***ARMOR CORRECTIONAL HEALTH SERVICES***
**FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

72.     Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73.     Defendant, ARMOR, as a corporation, in contracting with the State of Illinois to provide medical services at LAKE COUNTY, was and is responsible for having policies, practices, and procedures designed to assure that inmates at Defendant, LAKE COUNTY, including the Plaintiff, FINLAYSON, received adequate medical attention and treatment.

74.     Defendant, ARMOR, has not and did not have policies, practices, and procedures designed to assure that the Plaintiff, as an inmate at Defendant, LAKE COUNTY, received adequate medical attention.

14

75.     On December 30, 2019 and thereafter, Defendant, ARMOR's, policies, practices, and procedures were ineffective in delivering necessary medication attention for serious medical needs in that they:

    a.    Delayed review and approval of medical care to inmates as a cost-saving measure;

    b.    Delayed arranging for necessary medical care, including but not limited to orthopedic consultation and x-ray imaging studies;

    c.    Ignored requests for second opinions and/or follow-up consultation;

    d.    Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for evaluation of broken/fractured bones;

    e.    Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for recommended surgical evaluation; and

    f.    Failed to ensure the timely treatment of pretrial detainees with prescribed psychiatric medication.

76.     The aforementioned policies, practices, and procedures of Defendant, ARMOR, caused and continue to cause a serious and on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and deny him necessary care and treatment, thereby endangering the health and well-being of the Plaintiff, FINLAYSON.

77.     The aforementioned policies, practices and procedures of Defendant, ARMOR, amount to a deliberate indifference to Plaintiff's objectively serious medical needs.

78.     Defendant, ARMOR's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs caused and continue to cause him to suffer serious chronic pain, soreness, immobility, weakness, and visible deformity of his left hand. The Plaintiff's unresolved injury continues to affect his ability to live a normal life, write, feed himself, sleep properly, push, pull, and protect himself.

79.     Defendant, ARMOR, has been and is acting under the color of state law in carrying out for LAKE COUNTY the above-described policies, practices, and procedures concerning the provision of medical care and treatment to the Plaintiff, FINLAYSON.

80.     Defendant, ARMOR's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs constituted and constitute an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment, in violation of Plaintiff's constitutional rights.

81.     Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he otherwise would have had access to outside the County Jail, including the right to reasonable medical treatment. Because of this, theh Plaintiff, FINLAYSON, was by necessity wholly dependent upon Defendant, ARMOR, and medical staff.

82.     While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

83.     Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

84.     Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

85.     On December 30, 2019 and thereafter, Defendant, ARMOR, had a duty to  provide Plaintiff, FINLAYSON, with reasonable medical care and reasonable protection from harm.

86.     On December 30, 2019 and thereafter, Defendant, ARMOR, failed to provided Plaintiff, FINLAYSON, reasonable medical care and failed to protect him from harm.

87.     Plaintiff, FINLAYSON's, injuries are the direct and proximate result of Defendant, ARMOR's, failure to discharge its duty to protect Plaintiff, FINLAYSON, and failure to take objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON, by providing him with reasonable medical care.

88.     Because of Defendant, ARMOR's, failure to protect FINLAYSON from substantial risk of harm and failure to provide him with reasonable medical care, Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

**COUNT IV**

***WELL PATH, LLC***
**FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

72.     Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73.     Defendant, WELL PATH, as a corporation, in contracting with the State of Illinois to provide certain medical services at LAKE COUNTY, was and is responsible for having and following policies, practices and procedures designed to assure that inmates at Defendant, LAKE COUNTY, including the Plaintiff, FINLAYSON, received adequate medical attention and treatment.

74.     Defendant, WELL PATH, has not and did not have policies, practices and procedures designed to assure that the Plaintiff, FINLAYSON, as an inmate at Defendant, LAKE COUNTY, received adequate medical attention.

75.     Defendant, WELL PATH's, policies, practices, and procedures were ineffective in delivering necessary medical attention and treatment for serious medical needs in that they:

   a.     Delayed review and approval of medical care to inmates as a cost-saving measure;

   b.     Delayed arranging for necessary medical care, including but not limited to orthopedic consultation and x-ray imaging studies;

   c.     Ignored requests for second opinions and/or follow-up consultation;

   d.     Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for evaluation of broken/fractured bones;

   e.     Failed to have and/or follow a policy and procedure to ensure the timely transfer of pretrial detainees and/or inmates for recommended surgical evaluation; and

   f.     Failed to ensure the timely treatment of pretrial detainees with prescribed psychiatric medication.

76.     The aforementioned policies, practices, and procedures of Defendant, WELL PATH, caused and continue to cause a serious and on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and deny him necessary care and treatment, thereby endangering the health and well-being of the Plaintiff, FINLAYSON.

77.     The aforementioned policies, practices, and procedures of Defendant, WELL PATH, amount to a deliberate indifference to Plaintiff's objectively serious medical needs.

78.     Defendant, WELL PATH's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs caused and continue to cause him to suffer serious chronic pain, soreness, weakness, immobility, and visible deformity in his left hand. The Plaintiff's unresolved

injury continues to affect his ability to live a normal life, push, pull, lift, write, feed himself, sleep properly, and protect himself.

79.     Defendant, WELL PATH, has been and is acting under the color of state law in carrying out for Defendant, LAKE COUNTY, the above-described polices, practices, and procedures concerning the provision of medical care and treatment to the Plaintiff, FINLAYSON.

80.     Defendant, WELL PATH's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs constituted and constitutes an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment, in violation of Plaintiff's constitutional rights.

81.     Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he would have had access to outside the County Jail, which includes the right to reasonable medical treatment. Because of this, FINLAYSON was by necessity wholly dependent upon Defendant, WELL PATH, and its medical staff.

82.     While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

83.     Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

19

84.     Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

85.     On December 30, 2019 and thereafter, Defendant, WELL PATH , had a duty to provide Plaintiff, FINLAYSON, with reasonable medical care and reasonable protection from harm.

86.     On December 30, 2019 and thereafter, Defendant, WELL PATH, failed to provide Plaintiff, FINLAYSON, reasonable medical care and failed to protect him from harm.

87.     Plaintiff, FINLAYSON's, injuries are the direct and proximate result of Defendant, WELL PATH's, failure to discharge it's duty to protect Plaintiff, FINLAYSON, and failure to take objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON, by providing him with reasonable medical care.

88.     Because of Defendant, WELL PATH's, failure to protect Plaintiff, FINLAYSON, from substantial risk of harm and failure to provide him with reasonable medical care, Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

## COUNT V

### RILEY KLEUTGEN, R.N.
### FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

72.     Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73.     Defendant, KLEUTGEN, as staff nurse at Defendant, LAKE COUNTY, and employee of Defendant, ARMOR and/or Defendant WELL PATH, LAKE COUNTY's medical

contractor, had a duty to ensure that the Plaintiff, FINLAYSON, an inmate at Defendant, LAKE COUNTY, received reasonable medical attention and treatment.

74.     Defendant, KLEUTGEN, examined the Plaintiff, FINLAYSON, on December 30, 2019, December 31, 2019, January 04, 2020, March 21, 2020, and June 20, 2020.

75.     On each occasion, Plaintiff, FINLAYSON, presented with continuing complaints of severe pain, weakness, soreness, and visible deformity to his left hand.

76.     On December 30, 2019, and thereafter, Defendant, KLEUTGEN, was aware of Plaintiff, FINLAYSON's, continuing complaints of severe pain, weakness, soreness, and visible deformity to his left hand.

77.     On December 30, 2019, and thereafter, Defendant, KLEUTGEN, was aware that Plaintiff, FINLAYSON's, condition mandated immediate medical attention by a doctor and x-ray imaging which Plaintiff, FINLAYSON, did not receive from Defendant, KLEUTGEN.

78.     On December 30, 2019, and thereafter, Defendant, KLEUTGEN, after making observations regarding Plaintiff, FINLAYSON's serious medical needs, and becoming aware of Plaintiff's pain, failed to take the following appropriate steps to assure Plaintiff would receive necessary medical care in that she:

    a) Failed to timely and properly address a severe metacarpal fracture, including but not limited possible reduction and immobilization;

    b) Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

    c) Failed to timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

79.     Defendant, KLEUTGEN's, conduct caused a serious on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and a denial of necessary care and treatment, thereby endangering Plaintiff's health and well-being.

80.     The aforementioned acts or omissions by Defendant, KLEUTGEN, constituted a deliberate indifference to Plaintiff's objectively serious medical needs.

81.     Defendant, KLEUTGEN's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs caused him to suffer serious severe and chronic pain, weakness, immobility, soreness, and a visible deformity of his left hand. The delay in getting the Plaintiff's injury resolved has affected his ability to live a normal life, push, pull, lift, write, feed himself, sleep properly, and protect himself.

82.     Defendant, KLEUTGEN's, conduct demonstrated and demonstrates a deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs constituting an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment in violation of Plaintiff's constitutional rights.

83.     Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he otherwise would have had access to outside the County Jail. This includes the right to reasonable medical treatment. Because of this, Plaintiff, FINLAYSON, was by necessity wholly dependent upon Defendant, KLEUTGEN, to order necessary medical care.

84.     While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

85.     Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

86.     Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

87.     On December 30, 2019 and thereafter, Defendant, KLEUTGEN, had a duty to provide Plaintiff, FINLAYSON, with reasonable medical care and reasonable protection from harm.

88.     On December 30, 2019 and thereafter, Defendant, KLEUTGEN, failed to provided FINLAYSON reasonable medical care and failed to protect him from harm.

89.     The injuries of Plaintiff, FINLAYSON, are the direct and proximate result of Defendant, KLEUTGEN's, failure to discharge his duty to protect Plaintiff, FINLAYSON, and failure to take objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON,  by providing him with reasonable medical care.

90.     Because of Defendant, KLEUTGEN's, failure to protect Plaintiff, FINLAYSON, from substantial risk of harm and failure to provide him with reasonable medical care, Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

<u>**COUNT VI**</u>

***HEATHER MARTELON, ARNP***
**FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL
CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL
NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

72.    Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73.    Defendant, MARTELON, individually, as a nurse employed by Defendant, ARMOR and/or WELL PATH, contracted to work at Defendant, LAKE COUNTY, had a duty to ensure the Plaintiff, FINLAYSON, an inmate of Defendant, LAKE COUNTY, received adequate medical attention and treatment.

74.    Defendant, MARTELON, examined the Plaintiff, FINLAYSON, on occasion from December 30, 2019, to the present.

75.    On each occasion, Plaintiff, FINLAYSON, presented with continuing complaints of severe and chronic pain, weakness, immobility, soreness, and a visible hand deformity.

76.    On December 30, 2019, and thereafter, Defendant, MARTLEON, was aware of Plaintiff, FINLAYSON's, continuing complaints of severe and chronic pain, weakness, immobility, soreness, and a visible hand deformity.

77.    On December 30, 2019, and thereafter, Defendant, MARTELON, was aware that Plaintiff, FINLAYSON's, condition mandated evaluation by an orthopedic surgeon, x-ray imaging, follow-up, and physical therapy, which Plaintiff had not received.

78.    On December 30, 2019, and thereafter, Defendant, MARTELON, after making observations regarding Plaintiff's serious medical needs, and becoming aware of Plaintiff's pain,

failed take the following appropriate steps to assure Plaintiff would receive necessary medical care in that he:

    a) Failed to timely and properly address a severe metacarpal fracture, including but not limited possible reduction and immobilization;

    b) Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

    c) Failed to timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

79.    Defendant, MARTELON's, conduct caused a serious and on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and a denial of necessary care and treatment, thereby endangering Plaintiff's health and well-being.

80.    The aforementioned acts or omissions by Defendant, MARTELON, constituted a deliberate indifference to Plaintiff's objectively serious medical needs.

81.    Defendant, MARTELON's, deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs caused him to suffer serious severe and chronic pain, weakness, immobility, soreness, and a visible deformity of his left hand. The delay in getting the Plaintiff's injury resolved has affected his ability to live a normal life, push, pull, lift, write, feed himself, sleep properly, and protect himself.

82.    Defendant, MARTELON's, conduct demonstrated and demonstrates a deliberate indifference to Plaintiff's objectively serious medical needs constituting an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment in violation of Plaintiff's constitutional rights.

83.    Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he otherwise would have had access to

outside the County Jail. This includes the right to reasonable medical treatment. Because of this, Plaintiff, FINLAYSON, was by necessity wholly dependent upon Defendant, MARTELON, to order necessary medical care.

84.     While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

85.     Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

86.     Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

87.     On December 30, 2019 and thereafter, Defendant, MARTELON, had a duty to provide Plaintiff, FINLAYSON, with reasonable medical care and reasonable protection from harm.

88.     On December 30, 2019 and thereafter, Defendant, MARTELON, failed to provide Plaintiff, FINLAYSON, reasonable medical care and failed to protect him from harm.

89.     Plaintiff, FINLAYSON's, injuries are the direct and proximate cause of Defendant, MARTELON's, failure to discharge his duty to protect Plaintiff, FINLAYSON, and failure to take objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON, by providing him with reasonable medical care.

90.     Because of Defendant, MARTELON's, failure to protect Plaintiff, FINLAYSON, from substantial risk of harm and failure to provide him with reasonable medical care Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.

### COUNT VII

### *DR. ALVARO ENCINAS, M.D.*
### FAILURE TO PROTECT, FAILURE TO PROVIDE REASONABLE MEDICAL CARE AND DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS

72.     Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

73.     Defendant, ENCINAS, as staff physician at Defendant, LAKE COUNTY, and employed by Defendant, ARMOR and/or WELL PATH, Defendant LAKE COUNTY's medical contractor, had a duty to ensure that the Plaintiff, FINLAYSON, an inmate at Defendant, LAKE COUNTY, received adequate medical attention and treatment.

74.     Defendant, ENCINAS, examined the Plaintiff, FINLAYSON, on January 06, 2020.

75.     On this occasion, Plaintiff, FINLAYSON, presented with continuing complaints of severe and chronic pain, weakness, immobility, soreness, and a visible deformity of his left hand.

76.     On January 06, 2020, and thereafter, Defendant, ENCINAS, was aware of Plaintiff's continuing complaints of severe and chronic pain, weakness, immobility, soreness, and a visible deformity of his left hand.

77.     On January 06, 2020, and thereafter, Defendant, ENCINAS, was aware that Plaintiff's condition mandated evaluation by an orthopedic surgeon, x-ray imaging, follow-up, and physical therapy, which Plaintiff had not received.

27

78.     On January 06, 2020, and thereafter, Defendant, ENCINAS, after making observations regarding Plaintiff's serious medical needs, and becoming aware of Plaintiff's pain, failed take the following appropriate steps to assure Plaintiff would receive necessary medical care in that he:

a)  Failed to timely and properly address a severe metacarpal fracture, including but not limited possible reduction and immobilization;

b)  Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

c)  Failed to timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

79.     Defendant, ENCINAS', conduct caused a serious and on-going delay in providing Plaintiff, FINLAYSON, with adequate and appropriate medical attention and a denial of necessary care and treatment, thereby endangering plaintiff's health and well-being.

80.     The aforementioned acts or omissions by Defendant, ENCINAS, constituted a deliberate indifference to plaintiff's objectively serious medical needs.

81.     Defendant, ENCINAS', deliberate indifference to Plaintiff, FINLAYSON's, objectively serious medical needs caused him to suffer serious severe and chronic pain, weakness, immobility, soreness, and a visible deformity of his left hand. The delay in getting the Plaintiff's injury resolved has affected his ability to live a normal life, push, pull, lift, write, feed himself, sleep properly, and protect himself.

82.     Defendant, ENCINAS', conduct demonstrated and demonstrates a deliberate indifference to Plaintiff's objectively serious medical needs constituting an "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment in violation of Plaintiff's constitutional rights.

28

83. Because Plaintiff, FINLAYSON, was incarcerated as a pre-trial detainee at the time of his initial injury he had no access to the medical care he otherwise would have had access to outside the County Jail. This includes the right to reasonable medical treatment. Because of this, Plaintiff, FINLAYSON, was by necessity wholly dependent upon Defendant, ENCINAS, to order necessary medical care.

84. While a prisoner's rights may be reasonably restricted by the fact of confinement and the needs of the penal institution, jail walls do not form a barrier separating pre-trial detainees from the protections of the Constitution.

85. Moreover, pretrial detainees stand in a unique position as they have not been convicted of anything, and they are still entitled to the constitutional presumption of innocence. Unlike convicted prisoners, pretrial detainees cannot be punished at all, much less "maliciously and sadistically." Thus, the claims of pretrial detainees being held on probable cause arise under the Fourteenth Amendment's Due Process clause.

86. Claims brought by pretrial detainees under the Fourteenth Amendment Due Process Clause are therefore subject to an objective unreasonableness inquiry.

87. On December 30, 2019 and thereafter, Defendant, ENCINAS, had a duty to provide Plaintiff, FINLAYSON, with reasonable medical care and reasonable protection from harm.

88. On December 30, 2019 and thereafter, Defendant, ENCINAS, failed to provide Plaintiff, FINLAYSON, reasonable medical care and failed to protect him from harm.

89. Plaintiff, FINLAYSON's, injuries are the direct and proximate cause of Defendant, ENCINAS', failure to discharge his duty to protect Plaintiff, FINLAYSON, and failure to take

objectively reasonable measure to abate, mitigate or avoid the substantial risk of serious harm to Plaintiff, FINLAYSON, by providing him with reasonable medical care.

90.     Because of Defendant, ENCINAS', failure to protect Plaintiff, FINLAYSON, from substantial risk of harm and failure to provide him with reasonable medical care Plaintiff, FINLAYSON's, clearly established right to due process secured by the Fourteenth Amendment to the United States Constitution was violated.


## RELIEF

WHEREFORE, Plaintiff, RYAN C. FINLAYSON, requests the following relief based on Counts I through VII:

1.  Compensatory damages against each of the Defendants, LAKE COUNTY, ARMOR, WELL PATH, KLEUTGEN, MARTELON, and ENCINAS, jointly and severally, in the amount to be proved at trial;

2.  Punitive damages against each of the Defendants, jointly and severally, for malicious, wanton, and oppressive conduct in an amount to be proved at trial; and

3.  Attorney's fees and costs against each of the Defendants, jointly and severally.


## COUNT VIII

### ILLINOIS STATE LAW CLAIMS FOR MEDICAL MALPRACTICE

*LAKE COUNTY CORRECTIONAL FACILITY INSTITUTION, ARMOR CORRECTIONAL HEALTH SERVICES, INC., WELL PATH, L.L.C., RILEY KLEUTGEN, HEATHER MARTELON, AND ALVARO ENCINAS, M.D.*

1-71.   Plaintiff reasserts and re-alleges Paragraphs 1 through 71 of Count I of this Complaint, as if set forth fully herein.

30

72.     At all times mentioned herein, Defendant, LAKE COUNTY, had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of Plaintiff, FINLAYSON.

73.     On December 30, 2019, and at all times mentioned herein, Defendant, LAKE COUNTY, owed a duty to Plaintiff, FINLAYSON, as a patient at the facility, to exercise ordinary and reasonable care, including to properly review, approve, and arrange for the medical care.

74.     On December 30, 2019, and at all times thereafter and mentioned herein, Defendant, LAKE COUNTY, had a duty to be a reasonably careful correctional institution under the circumstances.

75.     On December 30, 2019, and at all times thereafter and mentioned herein, Defendant, LAKE COUNTY, as an institution and by and through its various agents and employees was institutionally and professionally negligent in the following ways:

    a) Failed to provide any pharmacologic therapy for Plaintiff's anxiety, probable alcohol withdrawal, Bi-Polar Disorder & PTSD;

    b) Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

    c) Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

    d) Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

76.     As a direct and proximate result of the aforementioned negligent acts or omissions, Plaintiff, FINLAYSON, sustained injuries of a personal and pecuniary nature, including, but not limited to, physical disability, permanent disability, visible hand deformity, and severe and chronic pain.

31

77.     On December 30, 2019, and at all times mentioned herein, Defendant, ARMOR, as the corporate medical contractor of Defendant, LAKE COUNTY, had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of Plaintiff, FINLAYSON.

78.     On December 30, 2019, and at all times mentioned herein, Defendant, ARMOR, as the corporate medical contractor, owed a duty to Plaintiff, FINLAYSON, as a patient at the facility, to exercise ordinary and reasonable care, including to properly review, approve, and arrange for the medical care.

79.     On December 30, 2019, and at all times thereafter and mentioned herein, Defendant, ARMOR, had a duty to be a reasonably careful correctional institution under the circumstances.

80.     On December 30, 2019, and thereafter, Defendant, ARMOR, as an institution and by and through its various agents and employees was institutionally and professionally negligent in the following ways:

a)     Failed to provide any pharmacologic therapy for Plaintiff's anxiety, probable alcohol withdrawal, Bi-Polar Disorder & PTSD;

b)     Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

c)     Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

d)     Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

81.     As a direct and proximate cause of the aforesaid negligent acts or omissions, Plaintiff, FINALYSON, sustained injuries of a personal and pecuniary nature including but not limited to continuing chronic and severe pain, soreness, weakness, and a visible hand deformity.

32

82.     On December 30, 2019, and at all times mentioned herein, Defendant, WELL PATH, as the corporate medical contractor of Defendant, LAKE COUNTY, had a duty to comply with the standards imposed by law, by public regulation, and by self-regulation under circumstances similar to those involving the care and treatment of Plaintiff, FINLAYSON.

83.     On December 30, 2019, and at all times mentioned herein, Defendant, WELL PATH, as the corporate medical contractor, owed a duty to Plaintiff, FINLAYSON, as a patient at the facility, to exercise ordinary and reasonable care, including to properly review, approve, and arrange for the medical care.

84.     On December 30, 2019, and at all times thereafter and mentioned herein, Defendant, ARMOR, had a duty to be a reasonably careful correctional institution under the circumstances.

   a)     Failed to provide any pharmacologic therapy for Plaintiff's anxiety, probable alcohol withdrawal, Bi-Polar Disorder & PTSD;

   b)     Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

   c)     Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

   d)     Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

85.     As a direct and proximate cause of the aforesaid negligent acts or omissions, Plaintiff, FINALYSON, sustained injuries of a personal and pecuniary nature including but not limited to continuing chronic and severe pain, soreness, weakness, and a visible hand deformity.

33

86.     On December 30, 2019, and at all times mentioned herein, Defendant, KLEUTGER, had a duty to act as a reasonably careful nurse under similar circumstances in the care and treatment of Plaintiff, FINLAYSON.

87.     On December 30, 2019, and thereafter, Defendant KLEUTGER, was professionally negligent in the following ways:

   a)  Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

   b)  Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

   c)  Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

88.     As a direct and proximate cause of the aforesaid negligent acts or omissions, Plaintiff, FINALYSON, sustained injuries of a personal and pecuniary nature including but not limited to continuing chronic and severe pain, soreness, weakness, and a visible hand deformity.

89.     On December 30, 2019, and at all times mentioned herein, Defendant, MARTELON, had a duty to act as a reasonably careful nurse under similar circumstances in the care and treatment of Plaintiff, FINLAYSON.

90.     On December 30, 2019, and thereafter, Defendant MARTELON, was professionally negligent in the following ways:

   a)  Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

   b)  Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

   c)  Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe  metacarpal fracture.

34

91.     As a direct and proximate cause of the aforesaid negligent acts or omissions, Plaintiff, FINALYSON, sustained injuries of a personal and pecuniary nature including but not limited to continuing chronic and severe pain, soreness, weakness, and a visible hand deformity.

92.     On December 30, 2019, and at all times mentioned herein, Defendant, ENCINAS, had a duty to act as a reasonably careful physician under similar circumstances in the care and treatment of Plaintiff, FINLAYSON.

93.     On December 30, 2019, and thereafter, Defendant ENCINAS, was professionally negligent in the following ways:

    a) Failed to timely and properly address a severe metacarpal fracture, including but not limited to approving and arranging for possible reduction and immobilization;

    b) Failed to provide Plaintiff with timely and appropriate pain management for a severe metacarpal fracture; and

    c) Failed to approve and timely arrange for recommended surgical treatment of Plaintiff's severe metacarpal fracture.

94.     As a direct and proximate cause of the aforesaid negligent acts or omissions, Plaintiff, FINALYSON, sustained injuries of a personal and pecuniary nature including but not limited to continuing chronic and severe pain, soreness, weakness, and a visible hand deformity.

95.     Supplemental jurisdiction is properly with this Court as it has original jurisdiction over the claims pled in Counts I through VI, and because the claim in this Count VII is so related to the claims in Counts I through VI that they form part of the same case in controversy under 28 USC § 1367.

96.     Attached to this Complaint are the attorney's affidavit and the physician report required under state law by 735 ILCS 5/2-622.

WHEREFORE, Plaintiff, RYAN FINLAYSON, demands judgment against Defendants, LAKE COUNTY CORRECTIONAL INSTITUTION FACILITY, a corporation, ARMOR HEALTH CORRECTIONAL SERVICES, INC., a corporation, WELL PATH, LLC, a corporation, RILEY KLEUTGEN, HEATHER MARTELON, and ALVARO ENCINAS, M.D., and each of them, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00).

By:   /s/  Sarah F. King
SARAH F. KING (6306333)
Attorney for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3600
Chicago, Illinois 60602
(312) 899-9090
SFK@cliffordlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN FINLAYSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-05824 |
| | ) | |
| LAKE COUNTY CORRECTIONAL | ) | Judge John J. Tharp, Jr. |
| FACILITY INSTITUTION, a corporation, | ) | |
| ARMOR CORRECTIONAL HEALTH | ) | |
| SERVICES, INC., a corporation, | ) | |
| d/b/a armor health corporation, | ) | |
| WELL PATH, LLC, a corporation, | ) | |
| RILEY KLEUTGEN, | ) | |
| HEATHER MARTELON, ARNP, and | ) | |
| ALVARO ENCINAS, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ATTORNEY AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1)**

SARAH F. KING states as follows:

1.     I am one of the attorneys with responsibility for this matter on behalf of the Plaintiff.

2.     I have consulted and reviewed the facts of this case with a health professional whom I reasonably believe: (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last six (6) years or teaches or has taught within the last six (6) years in the same area of health care or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

3.     The reviewing health professional has determined in a written report after review of the medical records and other relevant material involved in this particular action that there is a reasonable and meritorious cause for the filing of this action against LAKE COUNTY

1

CORRECTIONAL FACILITY INSTITUTION, a corporation, ARMOR CORRECTIONAL HEALTH SERVICES, INC., a corporation, d/b/a ARMOR HEALTH CORPORATION, WELL PATH, LLC, a corporation, RILEY KLEUTGEN, HEATHER MARTELON, ARNP, and ALVARO ENCINAS, M.D.

      4.     I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of this action against LAKE COUNTY CORRECTIONAL FACILITY INSTITUTION, a corporation, ARMOR CORRECTIONAL HEALTH SERVICES, INC., a corporation, d/b/a ARMOR HEALTH CORPORATION, WELL PATH, LLC, a corporation, RILEY KLEUTGEN, HEATHER MARTELON, ARNP, and ALVARO ENCINAS, M.D.

      5.     A copy of the written report is attached.

      FURTHER AFFIANT SAYETH NOT.

/s/ Sarah F. King              
Attorney for Plaintiff

[X]    Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure, I certify that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true.

Sarah F. King (6306333)
Attorney for Plaintiff
CLIFFORD LAW OFFICES, P.C.
120 North LaSalle Street, Suite 3600
Chicago, Illinois 60602
(312) 899-9090
sfk@cliffordlaw.com

December 16, 2021

Sarah F. King, Esq.
Clifford Law Offices, P.C.
120 North LaSalle Street
Suite 3600
Chicago, Illinois 60602

RE:     Ryan Finlayson, L134913

Dear Mrs. King:

I am a physician duly licensed to practice medicine. I am knowledgeable in the relevant issues involved in this particular case, specifically and have nearly twenty (20) years of correctional medicine experience. I have practiced within the last six years in the same area of medicine that is at issue in this case, and I am qualified by experience and demonstrated competence in the subject matter of this case. I have testified as an expert witness for the U.S. Attorney's Office in the Middle District of Pennsylvania.

I have reviewed an incomplete copy of the records of Ryan Finlayson from Lake County Correctional Facility and Skokie Northshore Hospital. The opinions stated herein are based upon a reasonable degree of medical certainty based upon my training, experience, and review of an incomplete copy of the records.

On Thursday, December 16, 2019, Ryan Finlayson was booked by the Lake County Sheriff's Office and placed in the custody of Lake County Correctional Facility as a pre-trial detainee. A "Patient-Health Assessment (PT-028) was not performed by Wellpath LLC until December 21, 2019 @ 12:55 p.m., ten (10) days after his incarceration. At this time his tuberculosis screening had not yet been completed, necessitating ongoing isolation. His classification form indicates that Mr. Finlayson has a history of seizures and was currently on pharmacologic treatment for bi-polar disorder, PTSD and anxiety. Despite recognition of these psychiatric conditions, it appears that Mr. Finlayson was not provided his prescribed pharmacologic treatment until December 27th @ 23:01. During a psychiatric screening exam on December 20 performed by Marta Borawski, Mr. Finlayson was noted to be in withdrawal from the lack of his prescribed medication. (Page 17 of 264). On Sunday, December 22 (almost 72 hours after booking), Mr. Finlayson was noted to be actively hallucinating, anxious and inquiring about his psychiatric medication. He was informed by Nurse Amy Diaz that the medication verification process was not complete. (Page 24/264). During an intake screening performed until December 26, 2019, ten (10) days after his incarceration, Mr. Finlayson emphasized, "I need my psych meds" to the nurse (Page 2 of 264). On December 27, 2019, Mr. Finlayson was seen by Susan Lin, M.D. telling her that prior to incarceration he was taking Remeron 30mg and Seroquel 400mg. Dr. Lin noted that Mr. Finlayson "… tried to shoot self in mouth last yr…", should start Remeron 15mg and Olanzapine 10mg. (Page 28/264). These two medications were started at 11:00PM on December 27th. (Page 122/264).

1

On December 30, 2019, at 8:55 a.m., Mr. Finlayson injured his dominant left hand by punching a wall/his cell door. There is an officer report indicating that an altercation had also occurred. (Lake County Classification file Page 16/16). A medical emergency was called by Officer Pitcher. Mr. Finlayson complained of severe pain to his left hand. Mr. Finlayson was given a single 600mg of ibuprofen (Motrin) to take. He was only prescribed a total of six doses. Mr. Finlayson was also given a pack of ice to place over his injured hand. After being attended to, Mr. Finlayson was placed in an isolation jail cell where he had to be under a 23-hour lockdown.

At 10:13AM on December 30, 2019, Mr. Finlayson was examined by Riley Kleutgen. (Page 30/264). Nurse Kleutgen noted that Mr. Finlayson reported that he felt his hand was broken. "Patient has wounds that appear to be from some kind of physical altercation but patient states he was punching the door but he doesn't know why, red raised mark and skin discoloration assessed on left side of neck. Small abrasion on left side of chin, bottom lip swollen and slightly discolored purple with possible tooth print in bottom lip, small abrasion with scant blood on right forearm. Patient has slight tremor with hands extended. Left hand swollen. Patient grimace when writer presses on palm of hand and fingers. Patient states he has full feeling and sensation. Cap refill < 3 seconds, patient demonstrates full ROM with ambulation. Patient unable to make a fist with left hand, patient able to wiggle fingers but states there is severe pain". Nurse Riley notified Nurse Practitioner Heather Martelon, ARNP. Nurse Martelon placed a phone order for an X-ray to be scheduled for the next day and prescribed Motrin be given twice a day for 3 days. (Page 31/264). He was offered a pack of ice for his hand.

It is unclear whether Mr. Finlayson did or did not have an X-ray performed on December 31, 2019. According to the statement in his pro se complaint, an X-ray was completed the next day.

On December 31, 2019, Nurse Riley contacted Dr. Susan Lin who placed a phone order for the antihistamine, hydroxyzine.

On January 4, 2020 at 2:44PM a call was placed by Nurse Riley to Dr. Alvaro Encinas regarding "meds for hand." Dr. Encinas placed a phone order for one 600mg Ibuprofen, twice daily for two weeks with Ice for 3 days.

On January 6, 2020 at 2:20 pm, twenty-one (21) days after being booked into the Lake County Correctional Facility, Mr. Finlayson was seen by Erika Erdakos, LCCSW, (page 32/264), for his "Mental Health – Initial Evaluation (MH-011) Intake Screening".

Assuming an x-ray was performed on December 31, 2019, there followed a two-week delay between getting his first x-ray and being evaluated at Evanston Hospital. During that time, Mr. Finlayson continued to suffer excruciating pain in his left hand and wrist.

On January 14, 2020, with further complaints of excruciating pain to his left hand, Mr. Finlayson was transported to Evanston Hospital—Sports Medicine Lincolnshire Ambulatory Care Center. While under the care of Dr. Hallie E. Labrador, MD, Mr. Finlayson had additional, multiple view x-rays of his left hand. The finding of the x-rays showed that there was a "comminuted angulated fracture of the midshaft of the fifth metacarpal. Adjacent soft tissue swelling was seen. A periosteal reaction noted along the midshaft of the fourth metacarpal, representing healing of a bone fracture. Clinical correlation was advised". Dr. Labrador recommended immediate splint immobilization with a surgical consultation. Dr. Labrador noted that there was a visible and significant hand deformity. After being placed in an "ulnar gutter wrist-based Fiberglass splint", Mr. Finlayson was instructed to follow-up with a hand surgery (Doctors Gray, Levitz, Mejia, and/or Malhotra).

2

Upon returning to The Lake County Correctional Facility, Mr. Finlayson reported to Ynez Rivera that "I have to see a surgeon." (page 37/264).

On February 18, 2020, after a thirty-five (35) day delay, Mr. Finlayson was transported to Skokie Northshore Hospital for an evaluation by a hand surgeon, Dr. Alfonso Mejia, M.D. Mr. Finlayson had additional multiple view x-rays of his left hand. Imaging confirmed an "angulated comminuted fracture of the distal shaft of the fifth metacarpal. There was development of some callus formation around the fracture compatible with healing although the fracture remained ununited. The dorsal angulation of the fracture fragments was unchanged from the previous x-ray that was performed on January 14, 2020, by Dr. Labrador. There was periosteal new bone formation around the shaft of the fourth metacarpal compatible with a healing fracture which has progressed from the previous x-ray". Dr. Mejia diagnosed Mr. Finlayson with a closed left fifth metacarpal shaft fracture. Given the significant angulation and resultant deformity, Dr. Mejia recommended surgical intervention of the left fifth metacarpal. This surgery was scheduled for March 18, 2020; Dr. Mejia informed patient about the risks of the surgery, and Mr. Finlayson consented to having the surgery performed.

On March 7, 2020, Mr. Finlayson was seen by Alvaro Encinas for "preoperative clearance". On March 16, 2020, Mr. Finalyson's surgery was canceled. From February 18, 2020 thru October 2020, Mr. Finlayson repeatedly inquired of the medical staff regarding scheduling of surgery and/or removal of his cast.

During this time Mr. Finlayson saw his mental health providers Dr. Susan Lin, Erika Erdakos, LCSW, and Marta Borawski. He also had contact with Riley Kleutgen, RN

On September 29, 2020, Mr. Finlayson filed a pro se complaint against the aforementioned individuals which stated,

" At 8:55 on 12/30/19, following an altercation, I broke my dominant hand. A medical emergency was called and Nurse Riley came to evaluate. After her evaluation I was taken to ASU where I sat until the next day in agonizing pain before being given ice and an ibuprofen. Neither helped the pain. Some time after that I was given an x-ray. I was told by the x-ray tech I would receive the results in a couple of hours. After 2 weeks of excruciating pain, inability to move my hand, consistently questioning Nurses Riley, Consuela and Farrah without an answer, and a grievance, I was taken to a hand specialist in Linconlnshire where I was finally put in a cast. The Dr. informed me that because of the time it took to get my hand casted, it had begun healing and would need surgery to correct it. If Ashley, who I believe is responsible for scheduling my appointment hadn't waited so long, or if the nursing staff who treated me had recommended I go to the hospital immediately, my left hand wouldn't have health properly. As it is I can no longer write for long periods of time,, make a grip, my hand it still in constant pain with a knuckle pushed back, daily tasks such as showering, exercising, washing my face or brushing my teeth have become difficult. I was in a cast for over 7 weeks and as of 9/3/20 the surgery has not taken place. I have anxiety from waiting for the surgery and from the fear that my hand may never be the same."

On October 6, 2020, HCP progress notes entered by Viktoriya Rouse-Freeman, ARNP states, "Arista referral placed for L hand 5th metacarpal injury in 12/2019, was followed by hand surgery and scheduled for surgery in march, surgery was canceled due to pandemic. Will need re-eval if surgery still is an option. Patient has pain and difficulty writing (L hand), exercising and other activities". (Page 60/264).

On October 20, 2020, at or about 9:30 a.m., Mr. Finlayson was transported to Dr. Mejia's office where his left hand was reexamined. He again had additional multiple view x-rays of his left hand. Dr. Lazarus (radiology) concluded that "There is now a healed fifth metacarpal neck fracture with deformity. There was

approximately 60 degree of volar angulation of the main distal fracture fragment. There was a healed fracture of the fourth metacarpal shaft with mild deformity. There was no acute fracture or subluxation. There was swelling over the dorsum of the hand where the joint spaces were preserved." Dr. Mejia reviewed the x-rays with the patient and found: "3 views of please insert entire statement here apex dorsal angulation." (Page 144, Radiology) Dr. Mejia recommended corrective surgery, Mr. Finlayson gave informed consent agreeing with the procedure and the surgery was scheduled for November 2, 2020.

Later, on October 20, 2020, Viktoriya Rouse-Freeman, ARNP noted in an HCP Progress note, "Pt seen today for follow-up with hand surgery per documentation will require surgical repair to right small finger. Appt for surgery was scheduled for 11/2, COVID test needs to be done 10/28 prior to procedure and send with pt record results. MS Miller was notified in person by Ashley W to place referral and prepare H and P and provided by Ashley with necessary forms today." (Page 62/264).

On November 02, 2020, at or about 9:30 a.m., Mr. Finlayson was transported to Ambulatory Surgery Glenbrook where he underwent corrective surgery on his left small finger metacarpal malunion under the care of Dr. Mejia and Dr. Malik. Mr. Finlayson was discharged from Ambulatory Surgery Glenbrook and was scheduled to follow-up with Dr. Mejia on November 10, 2020. Mr. Finlayson left with a splint over the operated hand.

On November 10, 2020, Mr. Finlayson presented to Skokie Ambulatory Care Center for his post-surgery follow up. Mr. Finlayson had post-op x-rays of the left hand which showed "conspicuity of instrumented osteotomy lucency of the fifth metacarpal shaft with associated osseous fragments alignment stable. Hardware intact. Positioning and alignment stable." A fiberglass short-arm cast was then applied to Mr. Finlayson and was scheduled to follow up in two weeks with a new x-ray and to have the rest of his sutures removed. No record of this follow-up visit was provided.

On January 19, 2021, Mr. Finlayson was transported to Dr. Mejia's office in the Skokie Ambulatory Care Center. The fiberglass short arm cast on his left hand was removed and replaced with a left wrist/hand splint which was to be worn at night only. Further x-rays were taken of Mr. Finlayson's hand which showed a side plate with five threaded screws crossing the osteotomy of the left fifth metacarpal. The alignment and position were near anatomic. The osteotomy lucency was still apparent with no visible osseous bridging. Mr. Finlayson was then prescribed physical therapy by Dr. Mejia. Mr. Finlayson's first appointment of occupational therapy took place on the same day at Occupational Therapy Skokie Ambulatory Care Center.

Based on the foregoing, in my professional medical opinion Lake County Correctional Facility institution and staff, Armor Correctional Health Services, Inc. d/b/a Armor Health corporation and staff, WellPath, LLC, (including but not limited to Riley Kleutgen, Heather Martelon, ARNP, Dr. Alvaro Encinas) deviated from the acceptable standard of care in the treatment of Ryan Finlayson.

Beginning December 16, 2019, and thereafter, Lake County Correctional Facility institution (including its administrative staff and correctional officers), Armor Correctional Health Services, Inc. d/b/a Armor Health corporation and its medical staff (including but not limited to Riley Kleutgen, Heather Martelon, ARNP, and Dr. Alvaro Encinas), Wellpath, LLC and its medical staff deviated from the acceptable standard of care in the following ways:

A.     Failed to provide any pharmacologic therapy for Mr. Finlayson's anxiety, probable alcohol withdrawal, Bi-Polar Disorder & PTSD, for at least 11 days;

B.     Failed to timely and properly address a severe metacarpal fracture, including but not limited to possible reduction and immobilization;

C.    Failed to provide Mr. Finlayson with timely and appropriate pain management for a severe metacarpal fracture; and

D.    Failed to timely arrange for recommended surgical treatment of Mr. Finlayson's severe metacarpal fracture.

As a direct and proximate result of the aforesaid deviation from the acceptable standard of care, Ryan Finlayson has apparently sustained permanent injuries.


As previously discussed, Mr. Finlayson's medical records appear to be incomplete. I reserve my right to amend this document as additional information becomes available to me.


Very Truly Yours,